UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

DEMETRIC McGOWAN,

                 Plaintiff,                Case No. 1:17-cv-184

v.                                     Honorable Paul L. Maloney

DIANA MORSE et al.,

                 Defendants.

_____/

## OPINION

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983, the Americans with Disabilities Act (ADA) 42 U.S.C. § 12101, and the Federal Rehabilitation Act (RA) 29 U.S.C. § 794(a). Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

I.      Factual allegations

Plaintiff Demetric McGowan is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Kinross Correctional Facility in Kincheloe, Michigan.  The events of which he complains, however, occurred while he was incarcerated at the Muskegon Correctional Facility (MCF) in Muskegon Heights, Michigan.

Plaintiff is suing MCF Corrections Officers Diana Morse and (unknown) Jones; MCF Sergeants (unknown) Nielson and (unknown) Marrero; and MCF Warden Sherry Burt.  Each Defendant is sued in his or her official and individual capacity.

On July 24, 2016, Plaintiff was enjoying a visit with his wife at MCF.  During the visit, Defendant Morse approached Plaintiff and his wife and inquired whether "everything was ok." (Compl., ECF No. 1, PageID.3.)  Plaintiff responded "yes" and then his wife responded "yes" as well.  (*Id*.)  Defendant Morse's concern was apparently prompted by physical contact between Plaintiff and his wife.

Shortly thereafter, Defendant Marrero arrived and instructed Plaintiff to step into the hallway.  Plaintiff was handcuffed.  Defendant Marrero instructed Defendant Morse to write a misconduct ticket on Plaintiff for assault on a visitor.[1]

---

[1] Plaintiff attached the misconduct report to his complaint as Exhibit 1. (Compl. Ex. A, ECF No. 1-1, PageID.2.) The report states: "While at the Officer's podium in the visiting room, I observed McGowen #309118 squeeze his visitor's neck with force in his hand.  After I approached McGowen and his visitor Jessica McGowen, I observed red marks on her neck.  I also observed tears in her eyes and that she appeared to have been crying.  The contact was non-consensual physical contact done in anger with the purpose of abusing the visitor."  (*Id*.)  Plaintiff claims the report is false, but he does not explain which aspect of the report is false.  It appears he does not deny he placed his hand on his wife's neck.  Plaintiff quotes with approval the conclusion "it does not appear that you used excessive force when you placed your hand on your wife's neck."  (Compl., ECF No. 1, PageID.6.)

Plaintiff was taken to segregation.  While awaiting placement in a segregation cell, Plaintiff informed Defendant Jones that Plaintiff had multiple sclerosis and asked to be put in a cell where "the windows was out."  (*Id*.)[2]  Defendant Jones informed Plaintiff that "This is not a hotel." (*Id*.)

Later that night, Defendant Nielsen reviewed the ticket with Plaintiff.[3]  Plaintiff informed Defendant Nielsen about his illness.

The night of July 24, 2016, was a hot night in Muskegon.  Plaintiff alleges that there was no ventilation in his cell.  He overheated, and suffered a multiple sclerosis exacerbation as a result.  The next afternoon he was taken to health care services via wheelchair.  Physician's Assistant Barbra Bien examined Plaintiff, prescribed prednisone and wrote a detail for ice and a fan.  Plaintiff

---

[2]Defendant Burt, in response to one of Plaintiff's grievances, noted that "all cell windows in segregation are locked shut . . . ."  (Compl. Ex. H, ECF No. 1-1, PageID.30.)  Plaintiff does not allege otherwise.  Thus, it appears the accommodation that Plaintiff requested was simply not available to him in segregation.  It may be for that reason, that the accommodation eventually made was the provision of a fan and ice.

[3]Review is one of the initial steps in the prisoner Class I misconduct discipline process:

N.   A supervisory level employee shall conduct a review of the Misconduct Report with the prisoner. The review shall be conducted within 24 hours after the report is written unless there is reasonable cause for delay . . . .

O.   The review shall include the following:

1. Examining the Misconduct Report to determine that the charge is appropriate and that the name and number of the prisoner are correct.

2. Reading the Misconduct Report to the prisoner.

3. Advising the prisoner of his/her right to witnesses, relevant documents, and a Hearing Investigator.  The reviewing officer shall note on the Misconduct Report if the prisoner requests a Hearing Investigator as well as identifying any witnesses and documents requested.

4. Noting on the Misconduct Report the location of any physical evidence.

5. Ensuring the prisoner receives a copy of the Misconduct Report after the review is completed.

Michigan Department of Corrections Policy Directive 03.03.105 (eff. 04/09/12).

does not allege any health problems thereafter.  Plaintiff was released from segregation on July 28,

2016, and no further action was taken on the misconduct ticket.

After leaving segregation, Plaintiff contacted his wife.  She informed him that

Defendant Marrero had obtained a written statement from her regarding the incident.  Defendant

Marrero confirmed that he had obtained a statement from Mrs. McGowan, but he refused to confirm

that fact in writing and, Plaintiff alleges, failed to turn the statement over to Defendant Nielsen, the

reviewing officer.

Plaintiff pursued a series of grievances regarding the "false" misconduct ticket and

his alleged mistreatment in segregation.  Plaintiff attaches the grievances and grievance responses

to his complaint.  Plaintiff's wife wrote a letter to Defendant Burt regarding these incidents.  He

attaches as exhibits to the complaint Defendant Burt's response and his wife's reply.  With regard

to the incident in the visiting room, Defendant Burt wrote:

> I have had the opportunity to view the video.  The behavior I observed was not
> appropriate in the visiting area.  I feel the officer reported what she observed and
> would have been remiss in her duties if she had not checked on you based on the
> behavior being displayed by the two of you.  I trust you are aware that the misconduct
> was pulled, therefore no action was taken.

(Compl. Ex. I, ECF No. 1-1, PageID.32.)

Plaintiff also wrote to the Legislative Corrections Ombudsman asking for an

investigation.  (Compl. Ex. L, ECF No. 1-1, PageID.37.)  Plaintiff attaches and relies upon the

written response of Eric Mattson, Ombudsman Analyst, who wrote:

> The ticket was written by C/O Morse, who believed you squeezed your wife's neck
> during the visit with force in your hand.  After reviewing the video, our office can see
> why the officer may have come to this conclusion.  When watching the video,
> initially you [sic] wife seemed annoyed and frustrated with you before you placed
> your hand on her neck.  You poked her with your right hand numerous times and

-4-

your wife is seen physically brushing your arm off of her before you placed your hand on your wife's neck during the visit.  However, it does not appear that you used excessive force when you placed your hand on your wife's neck during the visit.  Your wife submitted a statement that claimed you were not harmful in any way.  The ticket was pulled and no hearing was held on this misconduct.  Therefore, the process worked and you were not found guilty of this ticket.

(Compl. Ex. M, ECF No. 1-1, PageID.41.)

Plaintiff lists separate causes of action against each defendant.

Defendant Morse

With respect to Defendant Morse, Plaintiff contends that she failed to "write a correct misconduct ticket" and thereby violated Plaintiff's rights under the Fifth, Eighth, and Fourteenth Amendments.  (Compl., ECF No. 1, PageID.7.)  Plaintiff also alleges that Defendant Morse "knowingly made false federal law pursuant to 18 U.S.C. § 11519." (Compl., ECF No. 1, PageID.6-7.)

Defendant Marrero

Plaintiff alleges that Defendant Marrero violated Michigan Compiled Law 791.4405. There is no such statutory section.  There are Department of Corrections regulations that bear similar numbers; but, there are no regulations that are designated "791.4405."  Plaintiff alleges that Defendant Marrero violated MICH. COMP. LAWS §§ 28.773, 750.478, and 750.505, because he failed to turn over Plaintiff's wife's statement  to Defendant Nielsen.

Chapter 28 of the Michigan Compiled Laws relates to the Michigan State Police. There is no statutory section designated 28.773.  Chapter 750 of the Michigan Compiled Laws is the Michigan Penal Code.  Section 750.478 declares a public officer's willful neglect to perform the officer's duty a misdemeanor.  Section 750.505 imposes criminal penalties for the commission of

an offense that was indictable at common law but for which no provision is otherwise made in Michigan's statutes.

Plaintiff also alleges that the same conduct (refusing to turn over Plaintiff's wife's statement) violates MICH. COMP. LAWS § 791.5501. There is no such statutory section. There is a regulation 791.5501. The regulation relates to misconduct proceedings; however, it does not impose any requirement for documents or other evidence to be provided to a prisoner.

<u>Defendant Nielson</u>

Plaintiff alleges that Defendant Nielson was aware of Plaintiff's wife's statement, but failed to turn it over to a hearing investigator in violation of MICH. COMP. LAWS §§ 28.773, 750.478, 750.505, 79[1].5501, 791.251. Section 791.251 of the Michigan Compiled Laws provides for a hearings division within the MDOC and specifies the hearings for which the division is responsible, but the section does not impose any obligation to provide documents. Moreover, although the statutory section requires the hearings division to be involved before the imposition of punitive segregation or classification to administrative segregation, it does not require such involvement for temporary segregation.[4]

Plaintiff alleges further that Defendant Nielson was aware of the statement but kept Plaintiff in segregation for five days in violation of MICH. COMP. LAWS § 791.5501. Again, there is no such statutory section. The regulation designated 791.5501 relates to misconduct hearings; but

---

[4]The MDOC employs three separate categories of segregation: temporary, administrative, and punitive. MDOC Policy Directive 04.05.120 (eff. 09/27/10). Temporary segregation is used only to remove a prisoner from general population pending a hearing on a Class I misconduct, pending classification to administrative segregation, or pending an investigation into a prisoner's need for protection or transfer. *Id.*, ¶J. Typically, temporary segregation is limited to seven days. *Id.*, ¶K. Plaintiff was in temporary segregation.

it does not cover proceedings relating to placement in temporary segregation nor does it cover the provision of documents to prisoners for misconduct proceedings.

### Defendant Jones

Plaintiff alleges that he informed Defendant Jones that Plaintiff suffered from multiple sclerosis and requested of Defendant Jones that Plaintiff be placed in a cell with a window that opened. Plaintiff claims that Defendant Jones's response evidenced deliberate indifference to Plaintiff's serious medical need in violation of the Eighth Amendment. Plaintiff alleges that Defendant Jones's conduct also violated the RA, 29 U.S.C. § 705(20)(b); the Persons with Disabilities Civil Rights Act (PWDCRA), MICH. COMP. LAWS § 37.1101; and the ADA, 42 U.S.C. § 12101. Plaintiff also apparently contends, based on his reference to a statute regarding governmental liability for negligence, MICH. COMP. LAWS § 691.1401, that Defendant Jones was negligent.

### Defendant Burt

Finally, Plaintiff alleges that Defendant Burt, because she ordered all the segregation cells to be shut and bolted such that there is no ventilation, violated the Eighth Amendment, the RA, the PWDCRA, and the ADA.

Plaintiff asks the Court to enter a judgment declaring that Defendants have violated his Fifth, Eighth, and Fourteenth Amendment rights; firing all of the Defendants; enjoining the MDOC from transferring Plaintiff in retaliation for filing this suit; awarding compensatory damages of $25,000 against each Defendant; awarding punitive damages of $25,000 against each Defendant; and awarding emotional distress damages of $25,000 against each Defendant.

II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief."  *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr.*

*Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).  Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

> A.    Rights, privileges, or immunities secured by the United States Constitution or laws

Plaintiff makes specific reference to three federal constitutional amendments in support of his claim under § 1983; but, he also references violations of MDOC policies, state criminal laws, state correctional laws and regulations, and federal criminal laws.  Plaintiff's allegations of state policy, regulatory, and statutory violations, cannot form the basis for relief under § 1983.  Claims under §1983 can only be brought for "deprivation of rights secured by the constitution and laws of the United States."  *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982).  Section 1983 does not provide redress for a violation of a state law.  *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994).  Plaintiff's assertion that Defendants violated state law, regulation, or policy, therefore, fails to state a claim under § 1983.

The Court is unable to decipher Plaintiff's cryptic allegations that Defendant Morse "knowingly made false federal law pursuant to 18 U.S.C. § 11519." (Compl., ECF No. 1, PageID.6-7.)  Presumably, it includes typographical errors as there is no such statutory section.

It is possible that Plaintiff meant to cite 18 U.S.C. § 1519.  That section imposes criminal penalties for the falsification of a document with the intent to influence the investigation of any matter within the jurisdiction of any department or agency of the United States.  If that is the statute that Plaintiff meant to reference, he has failed to sufficiently allege a violation of it because

the investigation that Defendant Morse allegedly intended to influence was not "within the jurisdiction of any department or agency of the United States." 18 U.S.C. § 1519.

Moreover, even if Plaintiff properly alleged a violation of the statute, such a violation is not remediable by a § 1983 claim. Federal criminal statutes do not confer rights on private citizens. *See Am. Post Workers Union, AFL-CIO v. Independent Postal System of America, Inc.*, 481 F.2d 90, 93 (6th Cir. 1973) ("'Equally important is the firmly established principle that criminal statutes can only be enforced by the proper authorities of the United States Government and a private party has no right to enforce these sanctions.'"); *see also, Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."). Accordingly, Plaintiff's claim that Defendants are liable for violations of federal criminal statutes does not state a claim for violation of a right the violation of which can be remedied by a § 1983.[5]

### B.    "False" misconduct

Plaintiff claims that the "false" misconduct written by Defendant Morse violated his Fifth, Eighth, and Fourteenth Amendment rights. Plaintiff does not explain the nature of the violation. Construed liberally, Plaintiff attempts to state a claim for violation of his substantive due process rights by an abuse of authority. "Abuse of authority is not a constitutional violation unless the behavior 'shocks the conscience' or is an 'egregious abuse of governmental power.'" *Shehee v.*

---

[5]Additionally, for the same reason, generally, there is no private right of action for violation of a federal criminal statute. *Am. Postal Workers Union, AFL-CIO*, 481 F.2d at 93 (noting that "the general rule is that a private right of action is not maintainable under a criminal statute"). It does not appear Plaintiff intended to raise such a claim. If he did, it fails to state a claim for relief.

*Lutrell*, 199 F.3d 295, 301 (6th Cir. 1999) (citing *County of Sacramento v. Lewis*, 523 U.S. 833 847–849 (1998); *Thaddeus–X v. Blatter*, 175 F.3d 378, 387–88 (6th Cir. 1999) (*en banc*)).

Although Plaintiff repeatedly describes Defendant Morse's assertions in the misconduct ticket as false, his allegations reveal that the situation was much more nuanced. This is not a circumstance where a prisoner alleges a prison officer wholly fabricated a report of misconduct. Here, Plaintiff does not dispute that he put his hand around his wife's neck. The difference of opinion seems to be only whether he used "excessive force" when he did so.

The MDOC definition of "assault and battery" is broad.[6] Plaintiff never denies that he put his hand around his wife's neck. Indeed, he never even describes that part of the incident except to agree with the assessment of the Legislative Ombudsman Analyst that Plaintiff did not use excessive force. Although the use of excessive force might be sufficient to demonstrate a misconduct violation, it is not necessary. The offense requires only that the touching be done in anger. That is what the misconduct report describes. Plaintiff does not allege otherwise. Whether or not Plaintiff acted in anger is certainly an open question. Whether or not Plaintiff has alleged behavior that shocks the conscience or constitutes an egregious abuse of power is not. The alleged conduct of Defendant Morse does not shock the conscience nor is it an egregious abuse of power. Accordingly, Plaintiff has failed to state a claim for violation of his substantive due process rights. Plaintiff's claims against Defendant Morse are properly dismissed.

---

[6] "Intentional, non-consensual touching of another person done either in anger or with the purpose of abusing or injuring another . . .. Injury is not necessary but contact is." MDOC Policy Directive Attachment 03.03.105A (eff. 07/03/2015).

C.     Procedural violations by Defendants Marrero and Nielson

Having put to rest Plaintiff's various claims that Defendants Marrero and Nielson violated state laws or policies, the only allegation that remains is Plaintiff's general allegation that all of the Defendants violated his Fifth, Eighth, and Fourteenth Amendment rights.  Construed liberally and applied to Plaintiff's allegations relating to Defendants Marrero and Nielson, Plaintiff appears to allege that the Defendants violated his rights to due process when they mishandled the misconduct proceedings, particularly their failure to provide Plaintiff with a copy of his wife's statement.

The elements of a procedural due process claim are: (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006).  "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

Even if the actions of Defendants Marrero and Nielson could be characterized as interfering with adequate process, Plaintiff never suffered a deprivation of a life, liberty, or property interest to render that interference actionable under § 1983.  Plaintiff suggests that his five-day stay in temporary segregation pending investigation of the misconduct might be enough of a deprivation to warrant Fourteenth Amendment protection.  Plaintiff is simply wrong.

The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner.  *See Meachum v. Fano*, 427 U.S. 215, 225 (1976).  In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the

-12-

standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause.  According to the *Sandin* Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin*, 515 U.S. at 486-87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995).

Confinement in administrative segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration."  *Hewitt v. Helms*, 459 U.S. 460, 467-73 (1983).  Thus, it is considered atypical and significant only in "extreme circumstances."  *Joseph v. Curtin,* 410 F. App'x 865, 868 (6th Cir. 2010).  Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship."  *Harden–Bey v. Rutter*, 524 F.3d 789, 794 (6th. Cir. 2008).

In *Sandin*, the Supreme Court concluded that the segregation at issue in that case (disciplinary segregation for 30 days) did not impose an atypical and significant hardship. *Sandin,* 515 U.S. at 484.  Similarly, the Sixth Circuit has held that mere placement in administrative segregation, and placement for a relatively short period of time, do not require the protections of due process. *Rimmer-Bey,* 62 F.3d at 790-91; *see Joseph v. Curtin,* 410 F. App'x 865, 868 (6th Cir. 2010) (61 days in segregation is not atypical and significant). Certainly, Plaintiff's five days in temporary segregation would not qualify as atypical or significant.    Plaintiff has failed to state a due process claim against Defendants Marrero or Nielson.

-13-

D.     Inadequate ventilation in segregation-Defendant Jones

The entirety of Plaintiff's factual allegations with regard to Defendant Jones's actionable behavior is as follows:

19.     While waiting to be placed in a cell Plaintiff informed C/O Jones, who was working in segregation [,] that he has multiple sclerosis and asked to be put in a cell where the windows was out and was told by C/O Jones that "This is not a hotel."

(Compl., ECF No. 1, PageID.3.)   On the foundation of Defendant Jones's utterance of those five words, Plaintiff attempts to construct five claims: an Eighth Amendment claim for Defendant Jones's deliberate indifference to Plaintiff's serious medical needs; a discrimination claim under the ADA; a discrimination claim under the RA; a discrimination claim under Michigan's PWDCRA; and, apparently, common law negligence.   Plaintiff's allegations are insufficient to support so heavy a load.[7]

1. Deliberate indifference to serious medical needs

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes.   U.S. Const. amend. VIII.   The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency.   *Estelle v. Gamble*, 429 U.S.

---

[7]Although Plaintiff alleges nothing more with respect to Defendant Jones, Plaintiff attaches grievance documents that tell more of the story.  In his initial grievance, Plaintiff did not attribute the damning words "This is not a hotel" to Defendant Jones.  In his grievance he claims it was Officer Antes who made the statement. (Compl. Ex. B, ECF No. 1-1, PageID.17.)  Defendant Jones specifically denied that Plaintiff told Jones that Plaintiff's illness was "heat related." (Compl. Ex. G, ECF No. 1-1, PageID.28.)  Jones claimed that Plaintiff only told Jones that Plaintiff had multiple sclerosis (which is consistent with Plaintiff's carefully-worded allegations).  (*Id.*)  When Jones later went to close the slots on Plaintiff's cell, Plaintiff told Jones that he had a detail for open slots.  (*Id.*)  Jones had health care rewrite the detail to permit Plaintiff to keep his slots open.  (*Id.*)  Jones went off duty less than two hours after Plaintiff was placed in his cell.  (Compl. Ex. H, ECF No. 1-1, PageID.30.)  The on-duty nurse completed a medical assessment for segregation after Jones went off-duty.  (*Id.*)  The nurse reported no special medical needs.  (*Id.*)  All of the windows in segregation are locked shut.  (*Id.*)  There are no cells in segregation with windows that open.  (*Id.*)

102, 103-04 (1976).  The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner.  *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious.  *Id.*  In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.*  The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person."  *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004).  If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *id.* at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care."  *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834).  Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result."  *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.* at 837.

-15-

There can be little doubt that multiple sclerosis can give rise to serious medical needs. *Wilcox v. Sullivan*, 917 F.2d 272, 277 (6th Cir. 1990) ("[M]ultiple sclerosis is a disabling disease . . . [it] is an incurable, progressive disease subject to periods of remission and exacerbation.") Given the nature of the disease, however, the medical needs that arise from it can change significantly at different times.  Knowing that a person has multiple sclerosis does not inevitably lead to a conclusion that the person cannot endure conditions of high heat and humidity or limited ventilation.

Plaintiff alleges that he asked for a cell with windows that open, but he does not allege that he informed Defendant Jones that he might suffer serious harm if Jones did not change the conditions of heat and ventilation in segregation.  Nor does Plaintiff allege that Jones was aware of that risk even though Plaintiff did not inform Jones regarding it.  The only request Plaintiff made was for windows that open.  Jones could not provide that relief.  Under those circumstances, Jones's failure to provide open windows can hardly be construed as deliberate indifference to Plaintiff's medical needs.  Based solely on Plaintiff's sparse allegations, therefore, he has failed to state an Eighth Amendment claim against Defendant Jones.[8]

### 2.    ADA claim

The entirety of Plaintiff's allegations that Defendant Jones violated the ADA reads as follows:

> 60.    In reference to Paragraph 19 Defendant Jones violated Americans with Disabilities Act pursuant to 42 U.S.C. 12101.

(Compl., ECF No. 1, PageID.8.)[9]  Title II of the ADA provides:

---

[8]That conclusion is reinforced when one looks outside Plaintiff's words in the complaint to the exhibits he attaches to the complaint.  The facts revealed by that examination, facts which Plaintiff makes no effort to refute in his complaint, further undermine Plaintiff's Eighth Amendment claim.

[9]Paragraph 19 is quoted above.

. . . that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." § 12132 (2000 ed.). A "'qualified individual with a disability'" is defined as "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." § 12131(2). The Act defines "'public entity'" to include "any State or local government" and "any department, agency, . . . or other instrumentality of a State," § 12131(1). [The Supreme Court has] previously held that this term includes state prisons. *See Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998).

*United States v. Georgia*, 546 U.S. 151, 153-54 (2006). Thus, to state a claim under the ADA, a plaintiff must show that he is "(1) disabled under the statute, (2) otherwise qualified for participation in the program, [services or activities], and (3) being excluded from participation in, denied the benefits of, or subjected to discrimination under[,] the program, [services, or activities] by reason of his disability." *S.S. v. E. Ky. Univ.*, 532 F.3d 445, 453 (6th Cir. 2008).

It is difficult to apply the language of Title II of the ADA to the prison setting in this case. Although there are services, programs, and activities that Plaintiff may wish to participate in, segregation is not one of them. To state his claim Plaintiff must allege that he is disabled, that he is qualified for participation in segregation, and he is being excluded from participation in segregation (by way of a refusal to provide a cell with a window that opens) because of his disability. No matter how liberally the Court construes Plaintiff's two-paragraph ADA averments, they cannot be stretched to encompass all of the requisite allegations. Although there is little doubt that multiple sclerosis can be a disabling condition, it is not necessarily disabling. Plaintiff has not alleged how his multiple sclerosis has disabled him. Moreover, Plaintiff has failed to allege that Defendant Jones refused to give Plaintiff a cell with a window that opens because of Plaintiff's multiple sclerosis.

-17-

Essentially, Plaintiff alleges that Defendants failed to provide adequate treatment for his multiple sclerosis; treatment that was only required because of the summer heat in a locked-down segregation unit.  Failing to attend to the medical needs of disabled prisoners is not an ADA violation.  *Cannon v. Eleby*, No. 98-1546, 1999 WL 507006 at *1 (6th Cir. Jun. 10, 1999).[10]

Plaintiff has failed to state a claim against Defendant Jones for violation of the ADA.

### 3.   RA claim

The entirety of Plaintiff's allegations that Defendant Jones violated the RA reads as follows:

> 57.   In reference to Paragraph 19 Defendant Jones failed to respond to Plaintiff's serious medical need when Plaintiff informed him that he has multiple sclerosis and asked Jones if he oculd be placed in a cell with ventilation violating Rehabilitation Act pursuant to 29 U.S.C. 705(20)(B).

(Compl., ECF No. 1, PageID.8.)[11]    The RA provides, in pertinent part:

> No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . .

29 U.S.C. § 794(a).  A "program or activity" includes the operations of "a department, agency, ... or other instrumentality of a State . . . ." 29 U.S.C. § 794(b)(1).

---

[10]*See also Kiman v. New Hampshire Dep't of Corr.*, 451 F.3d 274, 284-285 (1st Cir. 2006); *McGugan v. Adlana-Bernier*, 752 F.3d 224, 231-232 (2d Cir. 2014) (regarding the RA); *Beckett v. Pennsylvania Dep't of Corr.*, 597 F. App'x 665, 667 (3rd Cir. 2015); *Miller v. Hinton*, 288 F. App'x 901, 903 (4th Cir. 2008); *Nottingham v. Richardson*, 499 F. App'x 368, 377 (5th Cir. 2012); *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996); *Simmons v. Navajo Cty*, 609 F. 3d 1011, 1022 (9th Cir. 2010); *Nasious v. Colorado*, 495 F. App'x 899, 902 (10th Cir. 2012); *Jones v. Rutherford*, 546 F. App'x 808, 812 (11th Cir. 2013); *Stevens v. Hutchinson*, No. 1:13-cv-918, 2013 Wl 4926813 at *4 (W.D. Mich. Sep. 12, 2013); *Winburn v. Davis*, No. 08-14996, 2009 WL 3002555 at *5 (E.D. Mich. Sep. 16, 2009). Of course, it is not impossible that medical treatment could be denied for an impermissibly discriminatory reason and, therefore, violate the ADA.  Plaintiff has not made that allegation.

[11]Paragraph 19 is quoted above.

The requirements for stating a claim under the RA[12] are substantially similar to those under the ADA, except that the RA specifically applies to programs or activities receiving federal financial assistance.  By accepting these funds, states waive sovereign immunity from claims under the RA.  *Nihiser v. Ohio EPA*, 269 F.3d 626, 628 (6th Cir. 2001).  For purposes of this Opinion, the Court will assume that the MDOC receives federal assistance for the prison programs at issue.

In addition, the RA provides that any discrimination be "solely" by reason of the plaintiff's disability, which is slightly stricter than the standard in the ADA.  *See* 29 U.S.C. § 794(a). Nonetheless, the statutes are similar.  So similar, in fact, that courts typically analyze claims under both statutes together.  *See Thompson v. Williamson Cty.*, 219 F.3d 555, 557 (6th Cir. 2000) ("Because the ADA sets forth the same remedies, procedures, and rights as the Rehabilitation Act . . . claims brought under both statutes may be analyzed together."); *Andrews v. Ohio*, 104 F.3d 803, 807 (6th Cir.1997) ("Because the standards under both of the acts are largely the same, cases construing one statute are instructive in construing the other."); *see also Owens v. O'Dea*, No. 97–5517, 1998 WL 3440, at *2 (6th Cir. May 27, 1998) ("Congress has dictated that Title II of the ADA be interpreted in a manner consistent with section 504 of the RA.") (citing 42 U.S.C. §§ 12134(b), 12201(a)).

The allegations missing from Plaintiff's ADA allegations are also missing from his RA allegations.  He has failed to allege that he is subject to a disability (handicapped) or that he was

---

[12]"The elements of a cause of action under section 504 [29 U.S.C. § 794] are as follows: (1) The plaintiff is a 'handicapped person' under the Act; (2) The plaintiff is 'otherwise qualified' for participation in the program; (3) The plaintiff is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under the program solely by reason of his handicap; and (4) The relevant program or activity is receiving Federal financial assistance." Doherty v. S. Coll. of Optometry, 862 F.2d 570, 573 (6th Cir. 1988).

denied a cell with windows that open because, and solely because of that handicap. Plaintiff has failed to state a claim against Defendant Jones for violation of the RA.

### E.   Inadequate ventilation in segregation-Defendant Burt

Plaintiff's allegations against Defendant Burt regarding inadequate ventilation are distinct from those against Defendant Jones; but, he raises the same legal claims against both. With regard to Defendant Burt, Plaintiff does not allege that she refused the "open window" accommodation; instead, he claims that she ordered all of the segregation cells to be sealed without regard to the effect it might have on the medical condition of prisoners with heat-related illnesses.

#### 1.   Eighth Amendment claim-Defendant Burt

Plaintiff's Eighth Amendment claim against Defendant Burt is not focused on Burt's knowing and deliberate indifference to a risk of harm specific to Plaintiff, but on a disregard of the plight of those suffering from heat-related illness generally. The Eighth Amendment prohibits punishments that are not only physically barbaric, but also those which are incompatible with "the evolving standards of decency that mark the progress of a maturing society," or which "involve the unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 102-103. To establish an Eighth Amendment claim, the prisoner must show that he was deprived of the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Conditions that are restrictive or even harsh, but are not cruel and unusual under contemporary standards, are not unconstitutional. *Id.*

Placement in segregation is a routine discomfort that is "'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347); *see also Jones v. Waller*, No. 98-5739, 1999 WL 313893,

at *2 (6th Cir. May 4, 1999).  Prisoners in segregation consistently complain about the ventilation.[13]

Claims regarding ventilation do not typically rise to the level of an Eighth Amendment violation.

Only in extreme circumstances, have courts found that inadequate ventilation may result in a

sufficiently serious risk to prisoner safety under the Eighth Amendment.[14]  However, absent such

extreme conditions, courts routinely have determined that claims concerning ventilation were

insufficient to state an Eighth Amendment claim.[15]

---

[13]*See, e.g., Selby v. Caruso*, 734 F.3d 554 (6th Cir. 2013); *Jasman v. Schmidt*, 4 F. App'x 233 (6th Cir. 2001); *Chandler v. Brown*, No. 94-2301, 1995 WL 452070 (6th Cir. Jul. 27, 1995); *Sanders v. Smith*, No. 92-6351, 1993 WL 94077 (6th Cir. Mar. 31, 1993); *Kitchen v. Snyder*, No. 1:16-cv-190, 2016 WL 1578837 (W.D. Mich. Apr. 20, 2016); *Jackson v. Stoddard*, No. 1:13-cv-1297, 2016 WL 805503 (W.D. Mich. Jan. 25, 2016); *Jackson v. Heyns*, No. 1:13-cv-636, 2015 WL 5691168 (W.D. Mich. Sep. 28, 2015); *Balcar v. Kissiner*, No. 1:15-cv-P118, 2015 WL 4068418 at *3 (W.D. Ky. Jul. 2, 2015) (collecting cases); *Hyde v. Leibach*, No. 3:12-0364, 2012 WL 4191864 (M.D. Tenn. Aug. 17, 2012); *Hall v. Woods*, No. 2:11-cv-57, 2012 WL 3962647 (W.D. Mich. Aug 17, 2012); *Berkshire v. Sanders*, No. 1:10-cv-942, 2012 WL 4486295 (W.D. Mich. Jun. 14, 2012); *Sadler v. Michigan Dep't of Corr.*, No.  09-cv-11375, 2010 WL 538291 (E.D. Mich. Feb. 2, 2000); *Taylor v. Luttrell*, No. 06-2522, 2008 WL 4065927 at *9 (W.D. Tenn. Aug. 27, 2008) (collecting cases); *Johnson v. Tripp*, No. 2:06-cv-8, 2007 WL 2406954 (W.D. Mich. Aug. 20 2007).

[14]*See, e.g., White v. Monohan*, 326 F. App'x 385 (7th Cir. 2009) (reversing district court dismissal of claim alleging that inadequate ventilation permitted temperatures to reach 110 degrees during the summer months); *Gates v. Cook*, 376 F.3d 323 (5th Cir. 2004) (finding that the Eighth Amendment was violated by a ventilation system that allowed summer temperatures to average in the 90s, unless prison officials took measures to ameliorate the heat by providing fans, ice water and daily showers); *Keenan v. Hall*, 83 F.3d 1083 (9th Cir.1996) (allowing a prisoner's claim that his cell was "[s]aturated with the [f]umes of [f]eces (thrown by some inmates), the smell of urine and vomit as well as other stale body odors" to proceed).

[15]*See, e.g., Vasquez v. Frank*, 290 F. App'x 927 (7th Cir. 2008) (holding that ventilation that allegedly caused dizziness, migraines, nasal congestion, nose bleeds and difficulty breathing did not rise to the level of an Eighth Amendment violation); *Chandler v. Crosby*, 379 F.3d 1278 (11th Cir. 2004) (citing cases and concluding that a ventilation system that allowed summer temperatures to average eighty-five or eighty-six degrees during the day and eighty degrees at night was not sufficiently extreme to violate the Eighth Amendment, where such temperatures were expected and tolerated by the general public in Florida); *Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004) (upholding the dismissal of a prisoner's claim that the confiscation of his extension cord, which was needed to operate a fan, deprived him of constitutionally adequate ventilation); *Bourrage v. McFarland*, No. 99-60923, 2001 WL 185034 (5th Cir. Feb. 6, 2001) (upholding dismissal of a prisoner's claim that inadequate ventilation had led to his prescription for an Albuterol Inhaler); *Jasman*, 4 F. App'x at 235-36 (affirming dismissal of a claim that the weatherstripping on the doors of the cells at a Michigan prison prevented air circulation and resulted in inadequate ventilation); *Davis v. Crowley*, No. 00-1475, 2000 WL 1871891 (6th Cir. Dec. 12, 2000) (concluding that a plaintiff's allegations that a ventilation system smelled strongly of gas did not allege a sufficiently serious harm where, despite his allegations that the fumes caused him to experience shortness of breath and watery eyes, the plaintiff failed to allege a substantial risk of serious harm); *Thompson v. County of Medina*, 29 F.3d 238 (6th Cir.1994) (upholding a dismissal of pretrial detainees' claim that a jail had inadequate ventilation); *King v. Berghuis*, No.1:10-cv-57, 2010 WL 565373, at *3 (W.D. Mich. Feb. 13, 2010) (dismissing prisoners' claim alleging that ventilation system moves less than 10 cubic feet of air and caused headaches).

Plaintiff does not allege any particular temperature in the segregation cells on July 24, 2016.  He does not dispute the temperatures stated by Defendant Burt in her response to his grievance: 84.9 degrees during the day, dropping to 73 degrees overnight.  (Compl. Ex. H, ECF No. 1-1 PageID.30.)  Speaking generally, such temperatures would not likely constitute a serious risk of harm to the prisoner population in segregation.  *See e.g. Jasman*, 4 F. App'x at 236; *Berkshire*, 2012 WL 4482695 at *14 ("The brief period plaintiff was exposed to warm temperatures in August 2010 falls well short of satisfying the objective component.  Exposure to temperatures in the 90-degree range on a few summer days is a routine occurrence for most individuals.")

It is against that backdrop that Plaintiff's allegations of Defendant Burt's deliberate indifference must be evaluated.  An Eighth Amendment claim comprises objective and subjective components:  (1) a sufficiently grave deprivation and (2) a sufficiently culpable state of mind.  *Farmer*, 511 U.S. at 834; *Woods v. LeCureux*, 110 F.3d 1215, 1222 (6th Cir. 1997).  A prison official cannot be found liable unless the official has acted with deliberate indifference; that is, the official must know of and disregard an excessive risk to inmate health or safety.  *Farmer*, 511 U.S. at 837; *see also Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991) (deliberate indifference standard applies to all claims challenging conditions of confinement to determine whether defendants acted wantonly).  The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference.  *Farmer*, 511 U.S. at 837.  Thus, the mental state required for an Eighth Amendment claim is not actual intent, but something close to common-law recklessness.  *Hubbert v. Brown*, Nos. 95-1983, 95-1988, 96-1078, 1997 WL 242084, at *5 (6th Cir. May 18, 1997) (relying on *Farmer*, 511 U.S. at 836 n.4.)

-22-

The reason for focusing on a defendant's mental attitude is to isolate those defendants who inflict punishment. *Farmer*, 511 U.S. at 839. The deliberate indifference standard "describes a state of mind more blameworthy than negligence." *Id.* at 835; *see also Whitley v. Albers*, 475 U.S. 312, 319 (1986) ("conduct that does not purport to be punishment at all must involve more than the ordinary lack of due care for the prisoner's interests or safety"). As the Supreme Court explained:

> The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concerns when it imposes tort liability on a purely objective basis. But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Farmer*, 511 U.S. at 837-38 (citations omitted). Thus, accidents, mistakes, and other types of negligence are not constitutional violations merely because the victim is a prisoner. *Acord v. Brown*, No. 93-2083, 1994 WL 679365, at *2 (6th Cir. Dec. 5, 1994) (citing *Estelle*, 429 U.S. at 106). Rather, what is required is a conscious disregard of a substantial risk of harm. *Farmer*, 511 U.S. at 839.

Plaintiff's broad assertion that Defendant Burt was "deliberately indifferent" does not support his conclusion; merely stating the "magic words" is not enough. *See Arnold v. South Carolina Dep't of Corr.*, 843 F. Supp. 110, 113 (D.S.C. 1994) (despite use of phrase "deliberate indifference" in his pleadings, inmate failed to show that defendants possessed the requisite mental state). Rather, Plaintiff must support his conclusion with factual allegations. The factual allegations in Plaintiff's complaint which pertain to the element of deliberate indifference are scant. As set forth above, the temperatures were not so extreme that one might inevitably infer a substantial risk of

-23-

harm to segregation inmates.  Plaintiff seems to concede that point because he alleges that the risk

pertained only to prisoners with heat-related illnesses.  (Compl., ECF No. 1, PageID.9.)  But Plaintiff

offers no allegation that Defendant Burt knew that such prisoners were in segregation on the night

of July 24, 2016, or that the segregation or health care staff would not act promptly to address the

risk for prisoners diagnosed with a heat-related illness.  There are no allegations in the complaint that

support Plaintiff's conclusory allegation that Defendant Burt was deliberately indifferent, that she

knowingly or recklessly disregarded a serious risk to Plaintiff on July 24, 2016.  Accordingly,

Plaintiff has failed to state an Eighth Amendment claim against Defendant Burt.

2.     <u>ADA and RA claims-Defendant Burt</u>

Plaintiff has failed to allege that Defendant Burt knew Plaintiff was disabled or that

she excluded Plaintiff from a public program because of his disability.  Accordingly, he has failed

to state ADA or RA claims against Defendant Burt.

F.     <u>State law claims</u>

Plaintiff alleges that Defendants violated several state laws, regulations or policies

and that Defendant Jones was negligent.  To the extent that Plaintiff seeks to invoke this Court's

supplemental jurisdiction over such state-law claims, the Court declines to exercise jurisdiction.  In

determining whether to retain supplemental jurisdiction, "[a] district court should consider the

interests of judicial economy and the avoidance of multiplicity of litigation and balance those

interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994

F.2d 1178, 1182 (6th Cir. 1993).  Ordinarily, where a district court has exercised jurisdiction over

a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed

prior to trial, the court will dismiss the remaining state-law claims.  *Id*.  Dismissal, however, remains

-24-

"purely discretionary."  *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012). Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction.  Accordingly, Plaintiff's state-law claim will be dismissed without prejudice.

III.   Pending Motions

Plaintiff has filed a motion to produce documents (ECF No. 2) and a motion to appoint counsel (ECF No. 3).

Plaintiff's motion to produce is rendered moot by the Court's resolution of Plaintiff's claims.

Although Plaintiff is not proceeding *in forma pauperis* in this action, he cannot afford counsel.  Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604-05 (6th Cir. 1993).  The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur- Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604-05; *see Mallard v. U.S. Dist. Court*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances.  In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel.  *See Lavado*, 992 F.2d at 606.  The Court has carefully considered these factors and determines that the appointment of counsel would not be appropriate.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

An Order and Judgment consistent with this Opinion will be entered.


Dated:   March 16, 2017                   /s/ Paul L. Maloney
                                          Paul L. Maloney
                                          United States District Judge